**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**BOBBY DEWAYNE JOHNSON,**

    **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**                    **Case No. 04-cv-796-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I.  INTRODUCTION

Before the Court is petitioner Bobby Dewayne Johnson's Section 2255 Petition, seeking collateral review of his sentence on the ground that it is unconstitutional.  Johnson also moves for a ruling on his Petition (Doc. 5) and moves for appointment of counsel (Docs. 3 & 18).  For the reasons stated herein, the Court does not find counsel is warranted and, finding an evidentiary hearing unnecessary, further denies Section 2255 relief.

### II.  BACKGROUND

**A.    The Arrest**

Petitioner Bobby Dewayne Johnson was arrested on October 7, 2001 at a motel in Collinsville, Illinois, after police officers searched him, finding 10.8 grams of crack cocaine and .62 grams of heroin.  Johnson had been contacted by a man acting as a police informant who wanted to buy more crack cocaine; the two arranged

to meet at the motel for the transaction.   The informant was staying at the motel. Previously, police officers had searched his motel room in order to follow up on a lead to a missing person's report.   Drugs and drug paraphernalia were found in the motel room.   Police officers enlisted the motel room occupant's assistance by persuading him to act as an informant.  Working with the police, the informant then contacted his supplier (Johnson) to deliver more crack cocaine.  Johnson agreed to meet the informant at his motel room.   Upon entering the room, Johnson was apprehended by uniformed police officers.

During his arrest, Johnson began crying, saying he did not want to go to jail.  He also told his arresting officers that he had a large heroin habit (about 2 grams per day).   Johnson was then taken to the Collinsville Police Department, where on the following day, approximately eleven hours after his arrest, he was advised of his *Miranda* rights.  Waiving these rights, Johnson gave his post-arrest statement, admitting that he had sold "1/16th" (one ounce) of crack cocaine to the informant six times in the past week and a half.  Johnson additionally admitted that for the past seven or eight months, he sold one ounce of crack cocaine per day, but that he did not sell heroin; the heroin was for his personal use only.  He again made the questioning police officers aware that he was a heroin addict.

**B.   Procedural History**

    **1.   Post-Arrest**

Based upon his post-arrest statement, Johnson was indicted by federal grant jury on October 18, 2001 for possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). The Government also filed an Information as to Sentencing, pursuant 21 U.S.C. §§ 841, 850 and 851, giving notice of sentence enhancement, which would increase the applicable mandatory minimum sentence to 10 years with a maximum sentence of life imprisonment with a doubled term of supervised release (if applicable). This enhancement was based upon Johnson's prior conviction for a felony drug offense.

    **2.   Change of Plea**

Johnson pled guilty to the indictment without a settlement agreement from the Government on January 29, 2002. At the Plea Hearing, Johnson stated that he had decided of his own free will to plead guilty. The district court informed Johnson of the mandatory minimum and maximum penalties, but could not yet determine his final sentencing range until it received the Presentence Investigation Report ("PSR"), prepared by the United States Probation Office. Moreover, during the recitation of facts, the Government revealed that it would be using Johnson's post-arrest statement to establish relevant conduct – namely, distribution in excess of 500 grams of crack cocaine. Johnson was informed that he could contest this amount, but that the relevant conduct would be determined by the Court and not a

jury if he pled to the charge.  Johnson said he understood and agreed to all except the amount of relevant conduct (over 500 grams), whereby the Court entered his plea of guilty.

### 3.   Sentencing

Johnson's Sentencing Hearing was conducted on October 3, 2002.  Prior to the hearing, the Probation Office submitted the PSR to the Court and the parties for their review.  Johnson filed written objections to the PSR, contesting the amount of relevant conduct based on his post-arrest statement.  The PSR found the amount of Johnson's relevant conduct consisted of distributing in excess of 1.5 kilograms of crack cocaine (the PSR actually calculated Johnson to have distributed 5.95 kilograms of crack cocaine).  Based on the applicable base offense level with the calculated adjustments and criminal history category of III, the PSR concluded Johnson's resulting sentencing range should be from 210 to 262 months.

Johnson believed his post-arrest statement was unreliable and therefore objected to the relevant conduct amount that was based solely upon his post-arrest statement.  As support for his challenge, Johnson claimed that at the time he gave police officers his post-arrest statement, he was undergoing severe symptoms of heroin withdrawal, which made him irrational and desperate to get more drugs. Johnson figured that if he gave his post-arrest statement, the police would let him go and he could get his next "fix."  Johnson offered expert witness testimony from a neuropharmacologist to explain the effects of narcotics on the brain (specifically heroin).  The Assistant Public Defender who represented Johnson during his initial

appearance also gave testimony regarding his condition. Medical records documenting Johnson's hospital stay on October 8, 2001[1] were admitted for the Court's consideration and a report from another expert, experienced in treating drug addicts, who reviewed the discovery in Johnson's case. In turn, the Government presented testimony from the two police officers – one involved with Johnson's arrest and the other with his post-arrest interview. Johnson lastly objected to the standard of proof applied for determining his relevant conduct, believing that a standard of proof higher than preponderance of the evidence should be applied.

The Court considered all the evidence presented: the PSR and the parties' briefings regarding their objections to the PSR. Overruling Johnson's objection, the Court found Johnson's post-arrest statement reliable and adopted the findings of the PSR. Additionally, the Court found by a preponderance of the evidence that Johnson's relevant conduct amounted to 1.5 kilograms or more of crack cocaine and sentenced him to 210 months of imprisonment, which was the lowest end of the sentencing range.

## 4.    Direct Appeal

Johnson appealed his sentence, maintaining his objection that his post-arrest statement was unreliable and therefore, it was clear error for the district court to consider that information when determining his relevant conduct, compounded by the fact that there was no further evidence of relevant conduct. Secondly,

---

[1] During his sentencing, Johnson claimed he was hospitalized after his arrest in order to treat his withdrawal symptoms.

Johnson asserted that as the relevant conduct finding was a quantity of narcotics 500 times greater than what was found on his person the day of his arrest, it amounted to the "tail wagging the dog," because it resulted in a possible three-fold increase of his sentence. Further, Johnson argued that a standard of proof higher than preponderance of the evidence should have been applied to the district court's finding of relevant conduct.

On appeal, the Seventh Circuit, in **United States v. Johnson, 342 F.3d 731, 736 (7th Cir. 2003)**, affirmed the judgment of the district court. According exceptional deference to the district court's credibility determination of the witnesses who testified at Johnson's sentencing hearing,[2] the Seventh Circuit "[could not] say that the district court committed clear error in rejecting Johnson's addiction argument and sentencing him based on his post-arrest statement." **Id. at 735**. Further, the appellate court did not find his post-arrest statement to be inherently unreliable due to his heroin addiction. **Id. at 734 (finding that as self-incriminating statements against a defendant's penal interest "'have long been considered reliable enough for use at trial . . . so we cannot say that they are too unreliable for use at sentencing.'")(quoting United States v. Szakacs, 212 F.3d 344, 352-53 (7th Cir. 2000)).**

---

[2] In reviewing the record of Johnson's Sentencing Hearing, the Seventh Circuit noted that "[t]he district court concluded that while the testimony proffered by Johnson was helpful in explaining the progression of opiate withdrawal, it did not override the officers' testimony that Johnson did not appear to be going through withdrawal at the time he made his statement." **Id. at 735**.

Also rejected was Johnson's argument on appeal that the district court, in finding relevant conduct, should have applied a higher standard of proof.  The Seventh Circuit acknowledged that where a factual finding "result[s] in a sentencing increase so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense," a higher standard of proof may be called required.  ***Id.* at 735 (quoting *United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir. 1993))**.  However, the appellate court recounted a number of previous cases in which it had "approved the preponderance standard" where the sentencing increase was much greater than Johnson's.[3]  ***Id.* at 736 and n.4 (reminding of the need for "prosecutorial discretion," underscored by the fact that Johnson's sentence resulted "due to his self-incriminating statement, and the circumstances in which he gave it . . . .")**.  Subsequent to the issuance of the Seventh Circuit's decision, Johnson then filed this Section 2255 Petition, seeking to vacate, set aside or correct his sentence.

---

[3] Exemplar cases cited by the Seventh Circuit in this regard are as follows:

> *United States v. Rodriguez*, **67 F.3d 1312, 1323 (7th Cir.1995)** (enhancement from 51-63 month range to sentence of life imprisonment)**;** *United States v. Porter*, **23 F.3d 1274, 1277 (7th Cir.1994)** (enhancement from 33-41 month range to 137-month sentence); *United States v. Masters*, **978 F.2d 281, 286-87 (7th Cir.1992)** (enhancement from 33-41 month range to 40-year sentence); *United States v. Schuster*, **948 F.2d 313, 315-16 & n. 3 (7th Cir.1991)** (enhancement from 21-27 month range to 5-year sentence).

*Id.* (stating that "[w]hile this list is not exhaustive, it is sufficient to show that the increase in Johnson's sentence is not one of those rare instances in which a higher standard is required").

### III.  <u>LEGAL STANDARD</u>

**Section 2255** provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**28 U.S.C. § 2255 (2006).**

However, a Section 2255 Petition "is neither a recapitulation of nor a substitute for a direct appeal." ***Omstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995)(quoting *Daniels v. United States*, 26 F.3d 706, 711 (7th Cir. 1994)**). Therefore, if an issue raised in a Section 2255 Petition was not also previously raised on direct appeal, it will be barred from the district court's collateral review unless the petitioner can show either: (1) "good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims;" or (2) show that "a refusal to consider the issue would lead to a fundamental miscarriage of justice." ***Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)(emphasis in original)(quoting *Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994))**.

The Seventh Circuit has made it very clear that there are three types of issues that cannot be raised in a Section 2255 motion:

> (1) issues that were rased on direct appeal, absent showing of changed circumstances; (2) non consitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

***Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992),** *overruled on other grounds*, **Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)**.

This procedural bar does not apply, however, to ineffective assistance of counsel claims as these may be brought in a Section 2255 Petition even if not previously raised on direct appeal. ***Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690 (2003)**.

Additionally, an evidentiary hearing on a Section 2255 Petition is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." **28 U.S.C. § 2255 (2006)**. The Seventh Circuit additionally requires a detailed affidavit to substantiate the Section 2255 Petition, so that Petitioner may not merely rest of "mere unsupported assertions." ***Barry v. United States*, 528 F.2d 1094, 1101 n. 31 & 32 (7th Cir. 1976)** *cert. denied*, **429 U.S. 826, 97 S. Ct. 81 (1976)**. Thus, an evidentiary hearing is not mandatory but, rather, at the discretion of the district court. ***Prewitt v. United States*, 83 F.3d 812, 820 (7th Cir. 1996)(citing *United States v. Taglia*, 922 F.2d 413, 319 (7th Cir. 1991))**.

## IV.  DISCUSSION

Johnson's Section 2255 Petition challenges his sentence on two grounds: (1) ineffective assistance of counsel and (2) violation of the Sixth Amendment's when the Court did not apply the "beyond a reasonable doubt" standard regarding its finding of relevant conduct.  The Court will now address each of these issues in turn.  As is explained below, the Court finds the "motions, files and record" of this case conclusively establish Johnson's claims are without merit.  Hence, an evidentiary hearing will not be granted.

**A.     Ineffective Assistance of Counsel**

Johnson first challenges his sentence on the grounds of ineffective assistance of counsel in violation of the Sixth Amendment.  The issue is whether Johnson's counsel's failure to object, during sentencing, to the reliability of his post-arrest statement, as well as the Amendment 487 enhancement, amounted to a Sixth Amendment violation for ineffective assistance of counsel.

The Sixth Amendment right to counsel is more specifically stated as the right to *effective* counsel.  ***Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052 (1984)**.    Therefore, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  ***Id.***  Basically, the alleged error(s) must be so severe "that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth

Amendment." *United States v. Holman*, **314 F.3d 837, 839 (7th Cir. 2002)(citing** *Strickland*, **466 U.S. at 689)**.

Under *Strickland*, a party alleging ineffective assistance of counsel must prove (1) that the trial counsel's "representation fell below 'an objective standard of reasonableness,'" and (2) "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell v. Cone*, **535 U.S. 685, 694, 122 S. Ct. 1843 (2002)(quoting** *Strickland*, **466 U.S. at 688, 694);** *see also Davis v. Lambert*, **388 F.3d 1052, 1059 (2004)(citing** *Strickland*, **466 U.S. at 688, 694)**.  The Court must keep in mind, however, that its after-the-fact review of counsel's performance is " 'highly deferential,'" and thus, counsel's conduct is afforded a "'wide range of reasonable professional assistance.'" *Bell,* **535 U.S. at 702 (quoting** *Strickland*, **466 U.S. at 689)**.   In other words, Petitioner must present evidence that, under the circumstances, conduct of counsel could not reasonably be considered "sound trial strategy." *Id.*  *See also United States v. Traeger*, **289 F.3d 461, 472 (7th Cir. 2002)(citing** *Strickland*, **466 U.S. at 689-90)**.

     **1.**    **Post-Arrest Statement**

The relevant conduct finding, which substantially increased Johnson's sentence, was obtained from Johnson's post-arrest statement.  Despite Johnson's assertion that his counsel should have objected to the reliability of his statement, Johnson's counsel *did* object to the reliability of this statement, arguing that at the

time of giving his post-arrest statement, Johnson was going through symptoms of heroine withdrawal and was thus willing to say anything.  In fact, this issue was also raised on appeal to the Seventh Circuit.  *See United States v. Johnson*, **342 F.3d 731, 736 (7th Cir. 2003)**.  Because Johnson now enshrouds this argument within a claim for ineffective assistance of counsel, it survives procedural default.

In his Section 2255 Petition, Johnson proffers a different theory as to why his post-arrest statement should be found unreliable.  Instead of the statement being unreliable because he was going through heroine withdrawal, Johnson asserts that his statement was unreliable because he was actually under the influence ("high") of a controlled substance at the time.  Specifically, Johnson believes his counsel should have "investigated why Johnson had told the police what he had instead of creating an assumed withdrawal defense based on counsel's observation of Johnson several days later . . ." and also that his counsel should have "listen[ed] to Johnson when he told her that he was high [when giving his statement] and lied because he wanted to get higher and not go through withdrawal by getting released . . ." (Doc. 2, p. 6).

In a Section 2255 Petition challenging counsel's performance during sentencing, Petitioner must show via objective evidence that he would have received a shorter sentence *but for* counsel's deficient action or failure to act.  *See Glover v. United States*, **531 U.S. 198, 202-04 (2001)**.  Yet, Johnson must first show counsel did not act reasonably.  In his Section 2255 Petition, Johnson offers nothing

more than mere self-serving assertions to bolster his claim of counsel's failure to argue Johnson was under the influence of narcotics at the time he gave his post-arrest statement. ***See Toro v. Fairman*, 940 F.2d 1065 (7th Cir. 1991)(ineffective assistance of counsel claim must be established by objective evidence and not merely by self-serving statements made by movant alone)**. Johnson does offer his own affidavit, stating that counsel "failed to ask and argue the question of whether [Johnson] was under the influence at the time of [his] arrest and several hours later" (Doc. 2, p. 2).  However, this is the extent of the "evidence" Johnson offers, which is not enough.  Instead, the Court questions what is glaringly absent from the record of Johnson's case: if he so strongly believed his counsel was incorrectly representing the facts regarding this post-arrest statement, why did he fail to voice this to the Court when given the opportunity?

During Johnson's Rule 11 change of plea hearing, the transcript reveals (emphasis added):

> THE COURT: Okay, now, with respect to the representation and advice and counsel Miss Schooley [Johnson's counsel] has provided for you, are you completely and thoroughly satisfied with all of those things?
>
> DEFENDANT JOHNSON: Yes.
>
> THE COURT: Okay.  Is there something that you've asked her to do *she's refused to do that you thought was unreasonable*?
>
> DEFENDANT JOHNSON:  No.
>
> THE COURT: You seem to be somewhat hesitant.  Tell me what the problem is.

DEFENDANT JOHNSON: I mean, when I was – when I got locked up, I had made a statement, you know, and I was – I didn't know exactly what I was really doing, you know, at that time, and that's what really got me looking at all the time for real is the statement.

THE COURT: Now, was that statement before or after Miss Schooley started representing you?

DEFENDANT JOHNSON: That was before.

THE COURT: Okay.  So, she wasn't your lawyer when you made that statement.  Is that right?

DEFENDANT JOHNSON: Right.

THE COURT: Okay.  So, it's not a situation where she advised you to make a statement or advised you not to make a statement?

DEFENDANT JOHNSON: Right.

THE COURT: *Is there anything else that concerns you about your representation?*

DEFENDANT JOHNSON: No.

***United States v. Johnson,*** Case No. 01-301523-DRH, Change of Plea Hearing, (Jan. 29, 2002) - Transcript 9:16 - 10:19.

The transcript from Johnson's sentencing hearing further reveals (emphasis added):

THE COURT: And did you go over that [Presentence Investigation] report carefully and thoroughly?

DEFENDANT JOHNSON: Yes, sir.

THE COURT: And did you take the opportunity to discuss with Miss Schooley all of your objections to that report?

DEFENDANT JOHNSON: Yes, sir.

THE COURT: And on your behalf she has filed objections, and you are aware of those, I take it?

DEFENDANT JOHNSON: Yes, sir.

THE COURT: *Are you satisfied that she has filed with the Court all of the objections that you have to the report?*

DEFENDANT JOHNSON: Yes, sir.

***United States v. Johnson,*** Case No. 01-301523-DRH, Sentencing Hearing, (Oct. 3, 2002) - Transcript 2:22 - 3:10.

Contrary to Johnson's current assertion, the record reveals that his counsel, in objecting to the reliability of the post-arrest statement, did not mistakenly construe Johnson's condition at the time he gave the statement.  Otherwise, his responses to the Court would have reflected as much.  **See Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977)("Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994)("[T]he record of a Rule 11 proceeding is entitled to a 'presumption of verity,' and that answers contained therein are binding.")(quoting *United States v. Seybold*, 979 F.2d 582, 587 (7th Cir.1992) (citations omitted), *cert. denied*, 508 U.S. 979, 113 S. Ct. 2980 (1993)).** Johnson's self-serving statements, when contrasted with the record, do not support his argument.  Further, given that the record also reveals Johnson's post-arrest statement was given approximately eleven hours after he was arrested and held by the police, it may actually have been a preferred defense strategy to assert that at the time of his statement, Johnson was starting to experience withdrawal symptoms, rather than asserting he was still "high" from heroin.  Assuming the likely fact that

Johnson was not able to do heroin while being detained by the police for the eleven hours prior to giving his statement, even if he had done heroin immediately prior to being arrested, it is unlikely he was still "high."[4]  Therefore, as Johnson has failed to present sufficient evidence to the contrary, the Court must "presume counsel made reasonable strategic choices."  **Traeger, 289 F.3d at 472**.  There will be no second-guessing.[5]

However, assuming *arguendo*, Johnson had presented adequate evidence showing his counsel acted unreasonably, the Court finds he still does not meet the requirements of showing resultant prejudice, due to counsel's supposed ineffectiveness.  Whether Johnson's post-arrest statement was allegedly given while he was undergoing withdrawal from heroin or was under the influence of the narcotic, it does not change the fact that the crux of his legal argument was that the statement was *unreliable* evidence from which to base findings of relevant conduct.  At Johnson's sentencing hearing, testimony was heard regarding whether Johnson had seemed coherent when giving his statement and thus, reliable.  The Court found

---

[4] According to information published by the National Institute on Drug Abuse:

> The short-term effects of heroin abuse appear soon after a single dose and disappear *in a few hours* . . . . Withdrawal, which in regular abusers may occur as early as a few hours after the last administration, produces drug craving, restlessness, muscle and bone pain, insomnia, diarrhea and vomiting, cold flashes with goose bumps ("cold turkey"), kicking movements ("kicking the habit"), and other symptoms.

National Institute on Drug Abuse ("NIDA"), InfoFacts: Heroin, (May 2006), *available at* http://www.nida.nih.gov/infofacts/heroin.html (last visited Apr. 10, 2007).

[5] In fact, the Court suspects Johnson does an about-face from his "withdrawal" to "under the influence" argument only because the former was rejected on direct appeal; he artfully avoids procedural default while vying for another bite at the apple.

from the evidence presented (both expert testimony and eyewitness) that Johnson's post-arrest statement was indeed reliable and therefore sufficient evidence of relevant conduct.  The eyewitness testimony would have remained consistent regardless of whether counsel would have objected to the post-arrest statement on the grounds of Johnson's experiencing heroin withdrawal or his being under the influence of heroin. In overruling Johnson's objection to the post-arrest statement during his sentencing hearing, the Court explained:

> So, really, although I don't, as I said, I don't adopt the burden beyond a reasonable doubt, clearly the evidence I think even rises to that level.  But as far as I'm concerned, the burden is by a preponderance of the evidence, so that for all of those reasons, based on all the evidence before me, I find that the statement of the defendant is a reliable statement.

*United States v. Johnson,* Case No. 01-301523-DRH, Sentencing Hearing, (Oct. 3, 2002) - Transcript 76:16-22.

Moreover, on direct appeal, the Seventh Circuit was similarly not persuaded that Johnson's post-arrest statement was made inherently reliable due to his heroin addiction. ***Johnson*, 342 F.3d at 734 (noting that self-incriminating statements against one's penal interest are sufficiently reliable for use at sentencing)(citation omitted)**.  The Court's previous finding that Johnson appeared lucid and coherent when giving his post-arrest statement excludes the possibility that it might have found differently had Johnson's counsel instead argued Johnson was "high" at the time.  Johnson offers no evidence to prove the outcome of his sentencing would have been different but for counsel's actions regarding the

argument as to why the post-arrest statement should be found unreliable.  Johnson has failed to meet either prong of the ***Strickland*** standard and as such, his claim of ineffective assistance of counsel regarding his post-arrest statement is without merit.

### 2. Amendment 487

Johnson next states an ineffective assistance of counsel claim for counsel's alleged failure to explain to him the definition of "crack" cocaine-base in accordance with Amendment 487 of the United States Sentencing Guidelines ("U.S.S.G.").   Further, Johnson faults his counsel's failure to object to the Amendment 487 enhancement applied to his sentence, because the Government did not prove the existence of "crack"by a preponderance of the evidence.   Johnson states that had he been aware of this enhancement, he may have been able to offer rebuttal expert testimony that the controlled substance was not crack cocaine.

Amendment 487 was the 1993 Amendment to U.S.S.G. § 2D1.1(c), which provided the following definition:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.. This amendment provides that, for purposes of the guidelines, "cocaine base" means "crack" . . . . Under this amendment, forms of cocaine base other than crack (e.g., coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine.

**U.S.S.G. § 2D1.1; *see also United States v. Adams*, 125 F.3d 586, 590-91 (7th**

**Cir. 1997)(discussing Amendment 487)**.

Regarding Johnson's argument that counsel failed to explain how "crack" was defined in the context of Amendment 487, the Court does not find counsel acted unreasonably. Johnson was a self-professed crack dealer, made evidenced from his post-arrest statement. The Indictment itself charged Johnson with "knowing[] and intentional[] possess[ion] with intent to distribute a mixture or substance containing cocaine base, commonly known as, *or in the form of "crack" cocaine*, a Schedule II Narcotic Controlled Substance, in an overall amount in excess of five (5) grams, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(iii)" (Doc. 7)(emphasis added). During his Rule 11 Change of Plea Hearing, the Court read Johnson the charges of his Indictment verbatim. Johnson replied that he understood the charge. The only thing he appeared to take issue with was the length of possible sentence he was facing due to a prior conviction enhancement. ***United States v. Johnson,*** Case No. 01-301523-DRH, Change of Plea Hearing, (Jan. 29, 2002) - Transcript 6:1 - 9:10.

The Government also provided a factual foundation and requisite elements to prove its case against Johnson. The Court asked Johnson to "listen carefully" to the Government's independent basis in fact for the plea, because the Court would then ask Johnson whether he understood what was said and whether he disagreed with anything. Change of Plea Hearing Transcript, 19:22-20:6. Throughout its proffer, the Government continually referred to the controlled substance as "crack cocaine." Change of Plea Hearing Transcript, 20:8-22:18.

Johnson, when subsequently questioned by the Court, stated that he understood and agreed to the factual information provided by the Government, with the exception of the relevant conduct information obtained via Johnson's post-arrest statement.[6] Change of Plea Hearing Transcript, 23:23-24:11.

This is not a case where the term "cocaine base" was used in lieu of the term "crack cocaine."  If this *were* the case, it may be reasonable to assume Johnson was not aware that the subject matter narcotic in his Indictment was "crack," thus subjecting him to a higher sentencing guideline range.[7]  However, the Government and the Court made it perfectly clear to Johnson of the fact he was being charged with possession with intent to distribute "crack cocaine."   Hence, it was not unreasonable for Johnson's counsel to ensure awareness of the language of Amendment 487.  ***See, e.g., United States v. Earnest*, 185 F.3d 808, 812 (7th Cir. 1999)("As we have recognized in similar cases, 'those who smoke, buy, or sell this stuff [crack cocaine] are the real experts on what is crack.'")(modification in original)(citation omitted)**.  This signifies Johnson has failed to meet the first prong of ***Strickland*** to show ineffectiveness of counsel.

Johnson also fails to make a showing of prejudice.  In order to meet this

---

[6]  The Court notes that Johnson merely objected to the reliability of his post-arrest statement.  He did not object to the fact that his post-arrest statement described the controlled substance attributable to his relevant conduct as "crack cocaine."

[7]  Crack cocaine carries a greater sentencing enhancement ratio of 100:1 as opposed to cocaine powder.  Therefore, as the sentencing guidelines currently dictate: possession of one ounce of crack receives the same sentence as possession of 100 ounces of powder cocaine."  ***Adams*, 125 F.3d at 590**.

prong, he must show that but for his counsel's failure to apprise him of Amendment 487," he would not have pleaded guilty.  First, nowhere in Johnson's Section 2255 Petition or accompanying affidavit does he make such an assertion, let alone offer objective evidence to satisfy his burden of showing prejudice.  Secondly, the Court finds that any alleged failure on counsel's behalf to explain to Johnson that he was pleading guilty to a crack cocaine charge instead of a powder cocaine charge was cured by the Court's Rule 11 colloquy given at his Change of Plea Hearing, at which he stated under oath that he clearly understood and did not object to the charge involving crack cocaine.

Johnson further acknowledged the Court's cautionary portion of the colloquy where it informed him that sentencing range applicable to him was a minimum of 10 years' imprisonment to a maximum life sentence.  Change of Plea Hearing Transcript, 15:6-22.  Johnson also affirmed that he understood the actual sentence he would be given by the Court was yet unknown.  "Rule 11 ensures a colloquy that 'exposes the defendant's state of mind in the record through personal interrogation.'" ***Key v. United States*, 806 F.2d 133, 136 (quoting *United States v. Fountain*, 777 F.2d 351, 356 (7th Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S. Ct. 1232 (1986))**.

Johnson's second point of contention regarding counsel's alleged ineffectiveness regarding Amendment 487 is the assertion that she failed to object to the "crack cocaine" sentencing enhancement.  He also believes counsel was

ineffective in that she failed to ensure that the Government prove by a preponderance of the evidence that the narcotic in Johnson's possession at the time of his arrest was, in fact, crack cocaine.  Regarding her failure to object to the enhancement, the Court finds counsel did not act unreasonably, given the fact Johnson openly acknowledged in court that he was in possession of crack cocaine at the time of his arrest.  Some would consider it unsound defensive tactics to object to a fact admitted to by one's own client.  ***See, e.g., Burkhalter v. United States*, 203 F.3d 1096, 1098 (8th Cir. 2000)(finding counsel did not act unreasonably by failing to require the Government prove the controlled substances were crack cocaine when the defendant acknowledged, during his Rule 11 colloquy, that these substances were crack cocaine)**.  Additionally, in regard to Johnson's assertion of counsel's failure to require the Government to prove by a preponderance of the evidence the controlled substance was, in fact, crack cocaine, the record reveals his counsel actually went so far as to request the Court apply a beyond a reasonable doubt standard of proof.  ***United States v. Johnson*,** Case No. 01-301523-DRH, Sentencing Hearing, (Oct. 3, 2002) - Transcript 65:1-9.  Therefore, Johnson's argument is not well-taken.

Prejudice due to this alleged failure also is not present in this circumstance.  Despite the actions of Johnson's counsel, the Court found, at sentencing, that the evidence meet both a preponderance of the evidence *and* a beyond a reasonable doubt standard that Johnson was in possession of crack

cocaine at the time of his arrest and also that the relevant conduct finding was for crack cocaine. The Court found persuasive both Johnson's acknowledgment of the charged offense during his plea hearing (which included the Government's statement that a DEA lab had analyzed the controlled substance found on Johnson's person at the time of his arrest and found it to be crack cocaine) and in the Presentence Investigation Report. The Court also found Johnson's admission concerning relevant conduct contained in his post-arrest statement to be reliable. Thus, Johnson has failed to show how this has prejudiced him in any way. Johnson contends that had the Government not been able to prove the controlled substance was crack cocaine, but instead, cocaine powder, his sentence would have been substantially shorter in length. Yet, as explained, the Court made a proper finding that the controlled substance was, in fact, crack cocaine, over Johnson's counsel's objection for a higher standard of proof.

The Court finds Johnson has failed to meet the **Strickland** standard for an ineffective assistance of counsel claim with respect to both his post-arrest statement and Amendment 487.

**B.      Johnson's Sentence**

The issue is whether Johnson's sentence was unconstitutional for not requiring a jury trial finding beyond a reasonable doubt of any disputed factual subject that increases the maximum punishment of a defendant. **Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004)**. Essentially, Johnson

believes that the Court's relevant conduct finding, which enhanced his sentence, was improper.  Because the amount of relevant conduct was not included in Johnson's indictment, he believes this constitutes an additional fact and the finding should have been made beyond a reasonable doubt.  Additionally, Johnson believes that the doctrine of excusable neglect applies to evade a procedural default of his failure to raise this issue on direct appeal, because the case "was unavailable to Johnson and his counsel at the time of his pleading, sentencing and appealing deadlines" (Doc. 2, p. 10).

Despite his lengthy attempt to differentiate this legal argument from the one made on direct appeal, by discussing the ***Blakely, Teague, Apprendi*** and ***Ring*** cases, the core issue remains the same.  The Seventh Circuit, on appeal, found that the district court did not err in making its relevant conduct finding pursuant to a preponderance of the evidence standard rather than a beyond a reasonable doubt or clear and convincing standard of proof.  ***Johnson,* 342 F.3d at 735-36**.  Thus, the core issue has already become law of the case and the holding stands.  ***See Peoples v. United States*, 403 F.3d 844, 849 (7th Cir. 2005)(reusing to abandon the doctrine of law of the case on collateral view pursuant to a Section 2255 Petition); *see also Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005)("In the context of § 2255 petitions, the 'law of the case' doctrine dictates that 'once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the**

same issue in a later phase of the same case, unless there is some good reason for reexamining it.'")(quoting *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986)).

Moreover, even if Johnson believes the issuance of **Blakely** somehow represents a change in the law subsequent to the Seventh Circuit's denial of the merits of his appeal, he is mistaken. First, **Blakely** was the Supreme Court's extension of its prior holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), which held that any fact increasing one's statutory maximum for a criminal sentence (except for a prior conviction enhancement) must be submitted to a jury and proved beyond a reasonable doubt. **Blakely** actually defined the term "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," and not from additional findings made by the Court. **542 U.S. at 303 (emphasis in original)**. Several years later, in **Booker**, the Supreme Court revisited its holding in **Blakely**, invalidating the federal Sentencing Guidelines, finding they were not mandatory. Thus, findings of fact to support an enhanced sentence must be proven beyond a reasonable doubt. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

The Seventh Circuit has determined that the Supreme Court's holding in **Booker**, **Apprendi**, and **Ring** are not to be applied retroactively. *McReynolds v. United States*, 397 U.S. 479, 480-81 (7th Cir. 2005)(finding support for

conclusion in light of the Supreme Court's decision in *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519 (2004), which held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), a case applying *Apprendi* principles as *Booker* did, was not retroactive on collateral review).  As Johnson's case became final when he failed to seek further appellate review on or after September 20, 2004,[8] *Booker*, issued in 2005, cannot retroactively apply to his case now on collateral review.  *McReynolds*, 397 F.3d at 481 (finding that the release of *Booker* on January 12, 2005, is the appropriate dividing line for retroactivity determinations, rather than the date of release of *Blakely* on June 24, 2004); *see also Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005)(stating that "decisions in the *Apprendi* sequence [including *Blakely* and *Booker*] do not apply retroactively on collateral review")(citing *Schriro*, 542 U.S. at 348; *McReynolds*, 397 F.3d 479; and *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002)).[9]

---

[8] On September 20, 2004, the Seventh Circuit issued its Order denying Johnson's Motion to Recall the Mandate Without Prejudice to Renewal after the Supreme Court Decides *U.S. v. Booker*. **Johnson v. United States, Case No. 02-3663 (7th Cir. 2004)(not reported)**.  Johnson did not continue to seek further appellate relief.

[9] Additionally, Petitioner fails to note that **Apprendi** actually holds that a jury trial is required for all factual findings that increase a defendant's sentence *beyond the statutory maximum*.  **Id. at 476, 490**.  In this case, the statutory maximum for the statute to which Johnson pled guilty to violating is 40 years.  **21 U.S.C. § 841(b)(1)(B) (West 2006)**.  Johnson pled guilty to violating **21 U.S.C. § 841(a)(1)**.  He was sentenced to a term of 210 months with 8 years supervised release.  His sentence did not exceed the sentence allowed by the statute.  Thus, **Apprendi**, does not apply because Johnson's sentence is well within that authorized by statute.

C.     **Appointment of Counsel**

Johnson has also moved for appointment of counsel in this matter (Docs. 3 & 18).  Unlike a criminal proceeding, a Section 2255 suit, as it is a civil matter, does not constitutionally guarantee the petitioner appointment of counsel. ***Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992)(citation omitted)**.  However, pursuant to Rule 8(c) of the Governing Rules of Section 2255 Proceedings, if a district court determines an evidentiary hearing is required, an indigent petitioner shall be appointed counsel.  ***Id.* (citing Rule 8(c), 28 U.S.C. foll. § 2255)**.

Otherwise, the decision to appoint counsel to an indigent petitioner rests solely within the discretion of the district court.  **18 U.S.C. § 3006A**.  The Seventh Circuit has instructed district courts to consider when determining whether to appoint counsel: "(1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) capability of the indigent to present the case; and (5) complexity of the legal issues raised by the complaint." ***Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983)(citing *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.1983))**.

The Court has already determined in this Order that an evidentiary hearing was unnecessary; the merits of Johnson's Section 2255 Petition can be resolved on the merits without a hearing.  Therefore, Johnson does not have an

absolute right to counsel – it is within the Court's discretion.  As is also evident from this Order, the Court does not find the merits of Johnson's Petition colorable.  The grounds for his challenges to his sentence do not require further investigation of which he is unable to perform.  The are legal arguments; additional fact-finding is not necessary.  Nor is it more likely that truth will be exposed if both sides are represented by counsel.  Again, the arguments challenging Johnson's sentence were resolved on legal grounds.  Previously, on similar challenges made to his sentence during his criminal proceedings, Johnson had the benefit of presenting evidentiary testimony at his sentencing hearing, with the aid of his then-appointed counsel.  Thus, the Court has an adequate factual record; Johnson's Section 2255 Petition does not credibly allege new evidence or facts.  Further, while all legal arguments can theoretically be considered "complex," the legal issues in this matter are not so extraordinarily complex and Johnson has done a sufficient job in presenting before the Court.  In fact, it appears Johnson has been aided by a "jailhouse lawyer."  Therefore, considering the relevant factors, the Court, in its discretion, finds appointment of counsel is not warranted here.

## V.  <u>CONCLUSION</u>

The Court **DENIES** Johnson's Section 2255 Petition (Doc. 1).   It therefore **FINDS AS MOOT** Johnson's Motion for Ruling on 2255 Motion (Doc. 5). Lastly, the Court **DENIES** Johnson's Motions for Appointment of Counsel (Docs. 3 & 18).

**IT IS SO ORDERED**.

Signed this 16th day of April, 2007.

/s/          David  RHerndon
**United States District Court**